FILED
2024 Jul-22  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| Melvin Ray AKA Bennu Hannibal Ra-Sun | |
| Plaintiff, | |
| v. | Case No. |
| Defendants John Hamm, and Angie Baggett, Phillip Mitchell, | |
| in their official capacities, | |
| Defendants Phillip Mitchell, Christopher Webster, Darrel Fox, Monika Gadson, Roderick Gadson, Derrick Dent, Brandon Burns, Keller Speaks, Barnes, Juan Howard, Billingsley, Jackson, LESD Agent John Doe 1, Desk Clerk Jane Doe 2. | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| in their individual capacities, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Melvin Ray, an incarcerated activist and founder of the Free Alabama Movement (FAM) brings this Complaint for damages and injunctive relief. Plaintiff Ray seeks injunctive relief to protect him from retaliation and allow him to continue to protest against the Alabama Department of Corrections' (ADOC) civil and human rights violations. For example, throughout the spring of 2023, members of the Tennessee Student Solidarity Network (TSSN) have held protests outside St. Clair Correctional Facility and other ADOC facilities to express their support for FAM and Plaintiff Ray. In response, correctional officers retaliated against Plaintiff Ray by placing him in solitary confinement, intentionally placing him into a cell that is inhumane and unfit for human inhabitation, at times placing Plaintiff Ray in an even more restrictive open-air cage

and placing other restrictions on Plaintiff Ray, and subjecting Plaintiff Ray to disciplinary charges without due process. Plaintiff Ray raises a claim under the First Amendment (free speech, free association, and peaceful assembly), Eighth Amendment (cruel and unusual punishment), and Fourteenth Amendment (due process).

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action asserts one or more deprivations of federal constitutional rights by a state officer.

2.      This Court has supplemental jurisdiction over state law claims.

3.      Venue is proper in the Northern Division of the Northern District of Alabama under 28 U.S.C. § 1391(b)(1), because all Defendants are residents of Alabama and at least one resides in this District, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Ray's claims occurred in this district.

## JURY DEMAND

4.      Plaintiff Ray demands a trial by jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the U.S. Constitution and Federal Rule of Civil Procedure 38(b).

## PARTES

5.      **Plaintiff Melvin Ray** is an activist currently incarcerated at Limestone Correctional Facility. Until May 30, 2024 Plaintiff was housed at St. Clair. Plaintiff is a founder of the Free Alabama Movement, a nonviolent collective of prisoners who advocate for civil and human rights and improved conditions within the ADOC.

6.     **Defendant John Hamm** is sued in his official capacity as the Commissioner of the ADOC for prospective relief under *Ex parte Young* for ongoing constitutional violations. At all relevant times Defendant Hamm acted and will act under color of state law.

7.     **Defendant Angie Baggett** is sued in her official capacity as the Classifications Director for the ADOC Classification Division for prospective relief under *Ex parte Young* for ongoing constitutional violations. Defendant Baggett's position has authority over inmate transfers and over the enemy validation process. At all relevant times Defendant Baggett acted and will act under color of state law.

8.     **Defendant Phillip Mitchell** is sued in his official capacity as Warden III of St. Clair for prospective relief under *Ex parte Young* for ongoing threat of constitutional violations. Defendant Webster has authority over correctional officers at St. Clair and their policies or practices concerning use of the holding cage. At all relevant times Defendant Phillip Micthell acted and will act under color of state law.

9.     **Defendant Christoper Webster** is a Correctional Officer employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Webster was serving in the capacity of a Correctional Officer and as such, he was acting under the color of law. Upon information and belief, Defendant Webster is a resident of Alabama.

10.     **Defendant Darrel Fox** is a Correctional Officer employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Fox was serving in the capacity of a Correctional Officer and as such, he was acting under the color of law. Upon information and belief, Defendant Fox is a resident of Alabama.

11.     **Defendant Monika Gadson** is a Lieutenant employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Monika Gadson was serving in the capacity

of a Lieutenant and as such, she was acting under the color of law. Upon information and belief, Defendant Lt. Gadson is a resident of Alabama.

12.     **Defendant Roderick Gadson** is a Lieutenant employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Roderick Gadson was serving in the capacity of a Lieutenant and as such, he was acting under the color of law. Upon information and belief, Defendant Lt. Gadson is a resident of Alabama.

13.     **Defendant Derrick Dent** is a Lieutenant employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Dent was serving in the capacity of a Lieutenant and as such, he was acting under the color of law. Upon information and belief, Defendant Lt. Dent is a resident of Alabama.

14.     **Defendant Brandon Burns** is a Lieutenant employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Burns was serving in the capacity of a Lieutenant and as such, he was acting under the color of law. Upon information and belief, Defendant Lt. Burns is a resident of Alabama.

15.     **Defendant Keller Speaks** is a Sergeant employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Speaks was serving in the capacity of a Sergeant and as such, he was acting under the color of law. Upon information and belief, Defendant Speaks is a resident of Alabama.

16.     **Defendant Barnes** is a Sergeant employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Barnes was serving in the capacity of a Sergeant and as such he was acting under the color of law. Upon information and belief, Defendant Barnes is a resident of Alabama.

17.    **Defendant Juan Howard** is a Sergeant employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Howard was serving in the capacity of a Sergeant and as such, he was acting under the color of law. Upon information and belief, Defendant Howard is a resident of Alabama.

18.    **Defendant Officer Billingsley** is a Correctional Officer employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Billingsley was serving in the capacity of a Correctional Officer and as such, he was acting under the color of law. Upon information and belief, Defendant Billingsley is a resident of Alabama.

19.    **Defendant Officer Jackson** is a Correctional Officer employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Jackson was serving in the capacity of a Correctional Officer and as such, he was acting under the color of law. Upon information and belief, Defendant Jackson is a resident of Alabama.

20.    **Defendant LESD Agent John Doe 1** is an officer employed with the Law Enforcement Services Division (LESD) of Alabama. At all times relevant to the events at issue in this case, Defendant LESD Officer John Doe 1 was serving in the capacity of a law enforcement officer and as such he was acting under the color of law. Upon information and belief, Defendant LESD Agent John Doe 1 is a resident of Alabama.

21.    **Defendant Desk Clerk Jane Doe 2** is a Nurse employed at St. Clair. At all times relevant to the events at issue in this case, Defendant Desk Clerk Jane Doe 2 was serving in the capacity of a Nurse and as such, she was acting under the color of law. Upon information and belief, Defendant Desk Clerk Jane Doe 2 is a resident of Alabama.

## CONDITIONS PRECEDENT

22.    Any and all conditions precedent to this lawsuit have been satisfied or exhausted.

## FACTUAL ALLEGATIONS

23.    Plaintiff Ray regularly engages in nonviolent activism within the confines of the ADOC to advocate for better conditions and civil and human rights.

24.    In 2013, Plaintiff Ray founded the Free Alabama Movement while incarcerated inside the ADOC. Since that time, Plaintiff Ray has been subjected to cruel, unusual and inhumane treatment at the hands of the ADOC supervisors and officers.

25.    Plaintiff Ray has been beaten by ADOC staff while handcuffed, food poisoned by ADOC staff, had multiple "hits" put on his life by ADOC officers and wardens, arbitrarily denied basic human rights and decencies, and confined for years at a time to various restrictive housing units (RHUs) (essentially solitary confinement) throughout the state of Alabama, resulting in severe mental and psychological anguish, pain and suffering for either organizing, participating in, or supporting non-violent and peaceful demonstrations for civil and human rights.

26.    Since February 6, 2024, members of the TSSN regularly engaged in protests outside of St. Clair.

27.    These protesters begin by confining themselves to free speech zones outside St. Clair and marching a half mile along the side of a public road to St. Clair. The protestors then, typically beginning around noon, engage in chants outside of the prison walls. Protesters voice their opposition to the ADOC's ongoing civil and human rights violations.

28.    Protesters also voice their support for FAM, including its founder, Plaintiff Ray.

29.    Protesters have conducted over ten consecutive events over a four-month period. During these protests, protesters stand a respectful distance from the facility walls and do not pose a security threat to the facility.

30.     These protesters have continued to show up and appear almost every week since February 6, 2024. These protests have occurred without any incident or concern to affect facility operations.

**A. On March 30, 2024, Defendants searched and harassed Plaintiff Ray and place him in the RHU cage for the first time**

31.     Beginning on around March 30, 2024, one week after a protest was held at the location of Alabama's new prison construction site, employees with the LESD and correctional officers at St. Clair conspired to retaliate, harass, sexually harass, and otherwise abuse Plaintiff Ray and violate his rights every time protesters were present outside of St. Clair.

32.     On or around March 30, 2024, a search team consisting of Defendants Monika Gadson, Speaks, Barnes, Billingsley, and Officer Russell went to an area outside of H dorm, an area known as the Indian/Spiritual Grounds, where Plaintiff Ray prayed as part of observing Ramadan to search, harass and otherwise intimidate him.

33.      Defendant Billingsley and Officer Russell were the first two to arrive at the Indian/Spiritual Grounds area and went straight to Plaintiff Ray to search him. Plaintiff Ray allowed the officers to search his person. The officers then searched the grounds around Plaintiff Ray. No contraband of any kind was found, and Plaintiff Ray was escorted inside to H Dorm and detained in the television room while the other officers continued to search his assigned living area and personal property.

34.     Defendants Monika Gadson, Speaks, and Barnes arrived at H dorm approximately two minutes later and went to Plaintiff Ray's assigned bed area and destroyed Plaintiff Ray's personal property. The officers claimed they were searching for contraband. The officers did not find any contraband. These officers desecrated Plaintiff Ray's sacred religious items, broke his headphones, and otherwise threw his property all over the ground.

35.    After Plaintiff Ray was escorted inside of H dorm, Defendant Billingsley went back onto the grounds and pretended to search them again. Ten minutes later, Defendant Billingsley returned with a cellphone and claimed he had just found it.

36.    The officers, Defendants Billingsley, Monika Gadson, Speaks, and Barnes claimed they knew the cell phone was Plaintiff Ray's.

37.    Despite having already searched Plaintiff Ray's person, Defendants Barnes and Billingsley then ordered Plaintiff to a bathroom and strip searched him. Again, Defendants Barnes and Billingsley found no contraband or unauthorized property.

38.    After completing their search, officers placed Plaintiff Ray into handcuffs and escorted him to the infirmary for a body chart where Plaintiff Ray received a body chart.

39.    Plaintiff Ray was placed in a holding cage on the restricted housing unit (RHU) walk yard by Defendant Speaks and Officer Russell. The RHU cage is a small, metal, confined cage with no running water or bathroom. Plaintiff Ray was held in this cage, handcuffed to the rear, for approximately five hours. He was then released by Officer Seals and told to return to his assigned living area.

40.    Officer Seals told Plaintiff Ray that he should not file any further grievances regarding the ongoing retaliation Plaintiff Ray was experiencing.

**B. On April 1, 2024, Defendants placed Plaintiff Ray in solitary confinement in cell C 35**

41.    On April 1, 2024, Defendant Roderick Gadson, the brother of Defendant Monika Gadson, Defendant Roderick Gadson's desk clerk, Defendant Jane Doe 2, a nurse whose true name is unknown to Plaintiff Ray, and Defendant Howard, called Plaintiff Ray into the shift office and told Plaintiff Ray that he was being placed into lock-up per orders from an LESD investigation.

42.     When Plaintiff Ray asked what he was being investigated for, Defendant Gadson remarked that "I don't know. . . Just cuff up."

43.     In the shift office, Plaintiff Ray was hand-cuffed and surrounded by Defendants Roderick Gadson, Jane Doe 2, and Howard in a threatening and hostile manner. Plaintiff Ray made a joking comment to Lt. Gadson about his actions, asking if "he was showing off for his girlfriend." Defendant Jane Doe 2's desk clerk made a lewd and insulting remark to Plaintiff Ray, "go fuck yourself."

44.     Defendants Roderick Gadson and Howard escorted Plaintiff Ray to the same RHU cage for several more hours and then placed him in solitary confinement in C 35 cell. The cell that Plaintiff Ray was placed into, C 35, was covered in filth, and lacking running water and lighting. The cell lacked a flap in a ground level window to prevent water from flooding the cell.

45.     Plaintiff Ray remained in solitary confinement in C 35 from April 1, 2024 to April 28, 2024. While in the cell, Plaintiff Ray was denied basic cleaning supplies, denied exercise and held on "24/7 lockdown," denied access to a regular shower except one per week, subjected to multiple targeted and harassing cell searches.

46.     In addition, while housed in C 35, Plaintiff Ray was housed in a racially segregated unit filled with only black prisoners, denied adequate and required nutrition such as the vegetarian meal he had been approved for, and arbitrarily denied access to canteen purchases.

47.     Plaintiff was also denied exercise twenty-four hours a day.

48.     On April 17, 2024, two civil rights attorneys sent a cease-and-desist letter on Plaintiff Ray's behalf demanding a stop to his unlawful solitary confinement.

49.     The letter pointed out that LESD was violating ADOC's own 72-hour limit on holding someone in solitary confinement without pending disciplinary charges and the disparity

in sanctions Plaintiff Ray received as compared to other prisoners at St. Clair. Prisoners actually caught in possession of a cell phone or other contraband are routinely not held in solitary confinement. The letter was addressed to the three St. Clair Wardens, and emailed to two of them, Defendants Fox and Mitchell, as well as lawyers in the Alabama Attorney General's office.

50.     Nonetheless, Plaintiff Ray remained in solitary confinement in cell C 35 until April 28, 2024.

**C. Defendants subjected Plaintiff Ray to repeated placement in a holding cage, searches, and property destruction**

51.     On consecutive occasions in March, April and May 2024, when protesters from TSSN were present outside of St. Clair, correctional officers converged on Plaintiff Ray, removed him from his assigned living area, placed him in the RHU walk yard cage for hours at a time, and searched his person and property.

52.     Placement in the RHU cage further restricts a prisoner's movement even more so than solitary confinement and deprives a prisoner of any privacy and or ability to use his personal property and is typically used to punish prisoners. The denial of drinking water and a bathroom while in the cage is unsanitary and abusive.

53.     These incidents of placement in the RHU cage, including the March 30, 2024 placement in restriction, are:

54.     On March 30, 2024, at approximately. 12:15 p.m., as TSSN protestors arrived at St. Clair, Plaintiff Ray was removed from his spiritual grounds by five correctional officers, Defendants Monika Gadson, Speaks, Barnes, Billingsley, and Officer Russell; Plaintiff Ray was searched, his property destroyed, his religious items were desecrated, and he was placed in a cage on the RHU walk yard while handcuffed to the rear for approximately five hours. Plaintiff Ray was allowed to return to his living area immediately after the protest ended.

55.    On April 1, 2024, Defendants Roderick Gadson and Howard told Plaintiff Ray in the shift office that he was being placed into lock-up per orders from an LESD investigation from Defendant LESD Agent John Doe 1. Defendants Roderick Gadson and Howard placed Plaintiff Ray in the RHU cage and then placed him in solitary confinement in C 35 cell.

56.    On April 13, 2024, at approximately 12;15 p.m., as TSSN protesters arrived at St. Clair, Plaintiff Ray (and the man in the C-36 cell) was removed from his assigned cell by four officers, Defendant Dent and Officer Hester, Officer Allan, Officer Russell, and others whose identities are unknown to Plaintiff Ray, placed in handcuffs, and escorted to the RHU cage where he was held for approximately three hours. At the same time, his person and property were searched again, and his religious items were desecrated. Plaintiff Ray complained to the officers on multiple occasions that the handcuffs were too tight, but no officer responded. Plaintiff Ray was allowed to return to his living area immediately after the protest ended.

57.    On April 20, 2024, at approximately 12:00 p.m., as TSSN protesters arrived at St. Clair, Plaintiff Ray was handcuffed by multiple officers and removed from his assigned cell in RHU. Plaintiff Ray's person and property were searched, and he was escorted to the RHU cage where he was detained for approximately one hour. Plaintiff Ray was allowed to return to his living area immediately after the protest ended.

58.    On May 2, 2024, at approximately 12:00 p.m., as TSSN protestors arrived at St. Clair, Plaintiff Ray was removed from his assigned cell in general population, O-1-4, and escorted to the "breezeway" where Defendants Monika Gadson and Webster were awaiting his arrival. Plaintiff Ray was ordered to sit in a chair in the breezeway for multiple hours. Plaintiff Ray was allowed to return to his living area immediately after the protest ended.

59.     On May 3, 2024, at approximately 2:00 p.m., immediately after a TSSN protest demonstration had ended at St. Clair, approximately eight to ten officers, including K-9 units, descended upon Plaintiff Ray in his assigned cell in general population, O-1-4. Defendant Burns burst into Plaintiff Ray's cell, immediately told the other person assigned to the cell, Mr. Loren Dock, to leave the cell, isolated and surrounded Plaintiff Ray in the cell, and ordered him to strip search. Plaintiff Ray was then removed from the cell and all of his property and religious items were again destroyed and strewn all over the floor. The officers removed several items from Plaintiff Ray's property, including a state-issued "J Pay tablet," without providing any justification. None of Plaintiff Ray's property was returned and no property receipts were issued for the confiscated items. No contraband or unauthorized items of any kind were found.

**D.    Denial of Due Process for solitary confinement**

60.     Plaintiff Ray was held in solitary confinement from April 1, 2024, until April 28, 2024.

61.     On April 3, 2024, officers served Plaintiff Ray with a disciplinary citation alleging that he had possession of a contraband cell phone.

62.     Correctional officers contended they knew the contraband cell phone they recovered on March 30, 2024 was Plaintiff Ray's because they claimed he was the only individual present on the grounds in the area they searched.

63.     In response to the disciplinary charge, Plaintiff Ray named three witnesses who were present in the area observing Ramadan with him—Leon Bond, Ricky Rankin, Edmond Brown.

64.     On April 4, 2024, Defendant Monika Gadson and Defendant Jackson, or correctional officers at St. Clair acting on their behalf, instructed the three identified witnesses not

to testify or get involved in Plaintiff Ray's disciplinary hearing or the three would face consequences and retaliation.

65.    At the disciplinary hearing on April 17, 2024, the disciplinary hearing officer, Defendant Jackson, said the three witnesses could not be called to attend because Plaintiff Ray had failed to provide the complete first and last name of each witness and therefore correctional officers could not locate the three witnesses.

66.    Plaintiff Ray said he had provided the bed location where one of the three, Leon Bond, slept and it was both possible for correctional officers to locate the three witnesses and their duty to do so in order to provide Plaintiff Ray due process.

67.    The arresting officer at the hearing, Defendant Monika Gadson, lied during the proceeding and claimed Plaintiff Ray was the only prisoner present on the grounds outside of H dorm when the area was searched and therefore claimed the recovered phone must be Plaintiff Ray's.

68.    The hearing officer did not allow Plaintiff Ray to pose any questions to the hearing officer.

69.    Defendants Jackson and Monika Gadson found Plaintiff Ray guilty and used it as a pretext to continue to keep Plaintiff Ray in solitary confinement.

**E.    Retaliatory transfer of Plaintiff Ray away from St. Clair.**

70.    On Thursday May 30, 2024, Plaintiff Ray was transferred from St. Clair to Limestone in an attempt to chill and interfere with the TSSN protest that was occurring weekly at St. Clair.

71.    Plaintiff Ray had been housed at St. Clair for several years. He developed and fostered a growing religious community. Despite the retaliation he faced at St. Clair, Plaintiff Ray never sought a transfer and he desired to remain at St. Clair.

72.    When Plaintiff Ray was transferred on May 30, 2024, ADOC officials simultaneously swapped he and fellow FAM co-founder Robert Earl Council, AKA Kinetik Justice, who had been at Limestone. Plaintiff Ray was sent to Limestone and Mr. Council was sent to St. Clair.

73.    Plaintiff Ray and Mr. Council were swapped because ADOC maintains an enemy validation designation for the two, as ADOC officials have admitted. For example, in the fall of 2023 ADOC considered transferring Mr. Council to St. Clair and ADOC asserted that it would have to swap him with Plaintiff Ray given the enemy validation.

74.    ADOC will likely assert that they had legitimate reasons for transferring Mr. Council away from Limestone (as he had requested for his protection) and that the transfer of Plaintiff Ray was required due to the enemy validation.

75.    But the enemy validation is obviously false: Plaintiff Ray and Mr. Council co-founded FAM and have been friends for over a decade and this has been repeatedly pointed out to ADOC officials since 2019, including numerous times over the past year.

76.    Plaintiff Ray and Plaintiff Council have known each other for more than twenty years and worked together to found FAM and draw attention to ongoing human rights abuses. He has "never been" Plaintiff Council's enemy and never requested that they be validated as enemies. ADOC officials have been on notice that Mr. Ray and Plaintiff Council are not enemies, and that any such enemy validation is false, since 2019, when attorney David Gespass wrote a November 8, 2019 letter to ADOC officials explaining this.

77.    The challenged transfer of Plaintiff Ray to Limestone is not the first time that transfers to Limestone have been used by ADOC as retaliation.

78.     For example, in retaliation for his activism, ADOC officials transferred prisoner-activist Juan Caples to Limestone, placing him in solitary confinement for more than two years until his attorney eventually intervened. Another prisoner who objected to breaking a prisoner-work-strike was transferred from a work-release facility to Limestone and placed in restrictive housing for several months.

## CLAIMS FOR RELIEF
## INJUNCTIVE RELIEF CLAIMS (I-IV)

### COUNT I FIRST AMENDMENT RETALIATION
### For Transferring Plaintiff Ray
### Injunctive relief against Defendants Hamm and Baggett

79.     In violation of the First Amendment, Defendants Hamm and Baggett in their official capacities are liable pursuant to 42 U.S.C. § 1983 and *Ex parte Young*, for the ongoing chill to Plaintiff Ray's First Amendment rights due to ADOC's transfer of Plaintiff Ray from St. Clair to Limestone.

80.     Defendants Hamm and Baggett in their official capacities have the authority and means to halt and prevent the challenged retaliation, by providing the injunctive relief requested. *See* ¶¶ 6-7.

81.     Plaintiff Ray is well known by ADOC for engaging in protected First Amendment activity, through his support of FAM and the TSSN protests at St. Clair and the new prison construction site, from February of 2024 through the present, and through his grievances. *See* ¶¶ 23-30.

82.     The timing of the transfer of Plaintiff Ray shows it was part of an escalating pattern of retaliation, including the holding cage, and solitary confinement, that started on March 30, 2024, in response to the TSSN protests and that continued until the May 30, 2024, transfer of Plaintiff Ray.

83.     Upon information and belief ADOC will assert as its reason for the challenged transfer of Plaintiff Ray that Robert Council was going to be transferred from Limestone to St. Clair and that he and Plaintiff Ray were designated as enemies, requiring them to be swapped, as happened on May 30, 2024, when they were transported at the same time to the other prisons.

84.     ADOC's reliance on the enemy conflict designation to transfer Plaintiff, despite abundant notice that he and Robert Council are not, and have never been, enemies, *see* ¶¶ 74-76, shows pretext for ADOC's retaliatory animus and efforts to target FAM.

85.     The transfer of Plaintiff Ray away from St. Clair is sufficiently severe to deter a person of ordinary firmness, including because Plaintiff Ray was deprived of his religious community and taken away from the pro-FAM protests at St. Clair.

86.     The retaliatory transfer and Plaintiff's current placement at Limestone pose an ongoing chilling effect on his First Amendment activity and the TSSN protests.

**COUNT II FIRST AMENDMENT RETALIATION**
**For Placement in Holding Cage, Solitary Confinement, Harassing Searches, and Property Destruction.**
**Injunctive relief Against Defendant Warden Phillip Mitchell in his official capacity**

87.     In violation of the First Amendment, Defendant Warden Phillip Mitchell, in his official capacity is liable pursuant to 42 U.S.C. § 1983 and *Ex parte Young*, for retaliation against Plaintiff Ray by ADOC officials who are upset by the weekly protests by TSSN.

88.     While at St. Clair, as detailed below, Plaintiff was subjected to a pattern and practice of abuse and harassment, including: (a) arbitrarily placing Plaintiff Ray in an RHU cage when protestors arrived, (b) placing him solitary confinement and denying him basic nutrition, cleaning supplies, showers, and exercise, (c) harassing searches and destruction of his property.

89.     Although Plaintiff was transferred away from St. Clair, he is likely to again be subjected to the challenged pattern and practice of retaliatory mistreatment (a)-(c), for two reasons.

16

90.    First, the challenged pattern and practice of retaliation was not solely due to officials at St. Clair, instead it was initiated by LESD officials in response to TSSN's protest at the new prison construction site. *See* ¶ 55. Those same LESD officials could target Plaintiff Ray for mistreatment at Limestone in response to the ongoing TSSN protests.

91.    Second, pursuant to Count I, Plaintiff should be transferred back to St. Clair where the challenged pattern and practice of mistreatment will likely resume.

92.    Defendant Mitchell, in his official capacity has the authority and means to halt and prevent the challenged retaliation, by providing the injunctive relief requested. *See* ¶ 8.

93.    Plaintiff Ray is engaging in protected First Amendment activity, through his support of FAM and the TSSN protests at St. Clair from February of 2024 through the present. *See* ¶¶ 23-30.

94.    From March 30, 2024, onwards ADOC officials have retaliated against Plaintiff Ray because of the TSSN protests at St. Clair and at the new prison construction site.

95.    Placing Plaintiff Ray in a holding cage on the RHU cage while handcuffed for several hours each time, which is typically a form of punishment, is sufficiently severe to deter a person of ordinary firmness. *See* ¶¶ 39, 51-52.

96.    Given the timing, that Plaintiff Ray is placed in the holding cage when the TSSN protesters arrive, and released when they leave; the only reason for this mistreatment of Plaintiff is the TSSN protest and Plaintiff's protected First Amendment activity in being associated with the protest and its pro-FAM message, anti-ADOC message.

97.    ADOC employees have not asserted any legitimate reason for placing Plaintiff Ray in the holding cage, instead he was told to stop filing grievances. *See* ¶¶ 40, 42.

98.    The solitary confinement of Plaintiff Ray, such as when he was held in solitary confinement from April 1- 28, 2024, based on fabricated evidence and without due process, *see* ¶¶ 41, 49, 52, 53-62, is retaliation in violation of the First Amendment.

99.    Plaintiff Ray will likely be again targeted with fabricated grounds for solitary confinement, because it is easy for ADOC officers to manufacture evidence of alleged misconduct on the part of Plaintiff Ray including by claiming that he has possession of a cell phone. *See* ¶¶ 35-37, 53-62.

100.    The abusive searches of Plaintiff Ray's cell and his body, and destruction of his property, that occurred in response to the TSSN protests, *see* ¶¶ 32, 34, 37, 52 would also deter a person of ordinary firmness.

101.    ADOC's mistreatment of Plaintiff Ray can only be explained by retaliatory animus and an attempt to prevent Plaintiff Ray from further protesting against the unconstitutional conditions and human rights violations taking place in ADOC facilities.

### COUNT III EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT
### Malicious Use of the Holding Cage

102.    In violation of the Eighth Amendment, Defendant Warden Mitchell, in his official capacity is liable pursuant to 42 U.S.C. § 1983 and *Ex parte Young*, for unnecessary use of the holding cage on Plaintiff Ray.

103.    Whether construed as a use of force or as a passive restraint, the caging and handcuffing of Plaintiff Ray, for hours on end without access to water or a bathroom, is "punishment" under the Eighth Amendment, which prohibits prison officials from using restraints maliciously or for no legitimate penological reason. *United States v. Hill*, 99 F.4th 1289, 1300 (11th Cir. 2024) ((citing *Hope v. Pelzer*, 536 U.S. 730, 742 (2002)).

104.    Plaintiff Ray engaged in no disruptive behavior and posed no security threats when placed in the holding cage. But ADOC is punishing Plaintiff Ray because the TSSN protestors voice support for Plaintiff Ray.

105.    The several hours that Plaintiff Ray was kept in the cage, the shackling of his arms, the denial of any drinking water or bathroom access, all contributed to his excessive pain and suffering. The public humiliation of being kept in a holding cage on a walkway also bears relevance.

106.    Defendant Mitchell, in his official capacity has the authority and means to halt and prevent the challenged retaliation, by providing the injunctive relief requested. *See* ¶ 8. Plaintiff Ray is likely to be returned to St. Clair, pursuant to Count I, where the challenged use of the holding cage will likely resume.

## COUNT IV FOURTEENTH AMENDMENT DUE PROCESS
### Misuse of the Holding Cage

107.    In violation of the Fourteenth Amendment's Due Process Clause, Defendant Warden Mitchell in his official capacity is liable pursuant to 42 U.S.C. § 1983 and *Ex parte Young*, for Plaintiff Ray's placement in the holding cage without any process.

108.    The use of the holding cage on Plaintiff Ray deprives him of a protected liberty interest in bodily autonomy and in his typical housing in general population.

109.    Plaintiff Ray's placement in the holding cage was severe and atypical relative to normal prison living conditions, because he was shackled, denied his personal belongings, and denied drinking water and bathroom access.

110.    Plaintiff Ray has been summarily taken to the holding cage with no process or finding that security concerns or some other legitimate basis justified placing him there.

111.    There has been no emergency or exigent circumstances that justified ADOC's immediate use of the holding cage without first providing notice and a hearing.

112.    Defendant Warden Mitchell in his official capacity has the authority and means to halt and prevent the challenged retaliation, by providing the injunctive relief requested. *See* ¶ 8.

113.    Plaintiff Ray is likely to be returned to St. Clair, pursuant to Count I, where the challenged use of the holding cage will likely resume.

## CLAIMS FOR DAMAGES
## COUNT V FIRST AMENDMENT RETALIATION

114.    In violation of the First Amendment, Defendants Christopher Webster, Darrel Fox, Phillip Mitchell, Lt. Monika Gadson, Lt. Derrick Dent, Lt. Derrick Dent, Lt. Burns, Sgt. Keller Speaks, Sgt. Barnes, Lt. Roderick Gadson, and Sgt. Juan Howard, Officer Billingsley, Officer Jackson, LESD Agent John Doe 1 in their individual capacity are liable pursuant to 42 U.S.C. § 1983, for retaliating against Plaintiff Ray.

115.    Plaintiff Ray has engaged in protected First Amendment activity, through his support of FAM and the pro-FAM TSSN protests from February of 2024 through May 30, 2024. *See* ¶¶ 23-30.

116.    From March 30, 2024, onwards ADOC officials have retaliated against Plaintiff Ray because of the TSSN protests at St. Clair and at the new prison construction site the week before, including (A) arbitrarily placing Plaintiff Ray in a RHU cage when protestors were present, (B) harassing searches and destruction of his property, and (C) placing him solitary confinement without due process and (D) housed him in a solitary confinement cell which was unsanitary and denied him cleaning supplies, showers, exercise, and basic necessities.

## (A) Holding Cage

**Against Defendants Christopher Webster, Darrel Fox, Phillip Mitchell, Lt. Monika Gadson, Lt. Derrick Dent, Sgt. Keller Speaks, Sgt. Barnes, Lt. Roderick Gadson, and Sgt. Juan Howard**

117.    Placing plaintiff Ray in a holding cage on the RHU walk yard while handcuffed for several hours each time, without drinking water or bathroom access, is sufficiently severe to deter a person of ordinary firmness each time it happened. *See* ¶¶ 39, 51-52. Alternatively, the repeated use of the holding cage on Plaintiff Ray establishes the requisite severity.

118.    Given the timing, that Plaintiff Ray is placed in the holding cage when the TSSN protesters arrive, and released when they leave; the only reason for this mistreatment of Plaintiff is the TSSN protest and Plaintiff's protected First Amendment activity in being associated with the protest and its pro-FAM message.

119.    ADOC employees have not asserted any legitimate reason for placing Plaintiff Ray in the holding cage, when he had engaged in no misconduct and posed no threat of harm, and instead he was told to stop filing grievances. *See* ¶¶ 40, 42.

120.    The following Defendants are each liable for the retaliatory use of the holding cage on Plaintiff Ray as follows.

121.    Defendant Webster is liable because he was present on May 2, 2024 at the breezeway when Plaintiff Ray was singled out and detained for several hours while TSSN protesters were at St. Clair, *see* ¶ 58. Defendant Webster must have known of the challenged practice because of the April cease and desist letter sent to the other Wardens, *see* ¶ 49. The notoriety of the protests, and the use of the holding cage in response on a weekly basis for two months, shows that Warden Webster must have known it was occurring. *see* ¶¶ 51, 54-59. Defendant Webster failed to take any meaningful measure to prevent the continued use of the holding cage on Plaintiff Ray.

122.    Defendants Fox and Mitchell knew and must have known of the protestors at St. Clair supporting Plaintiff Ray, of the repeated use of the holding cage on Plaintiff, and of the cease-and-desist letter from Plaintiff's attorneys; but they each failed to order a halt to the mistreatment of Plaintiff Ray. *See* ¶¶ 49, 51, 54-49.

123.    Defendant Monika Gadson is liable for the challenged pattern and practice because she led the search team on March 30, 2024 that began the retaliatory mistreatment of Plaintiff Ray while TSSN protestors were present at St. Clair, and placed Plaintiff Ray in the RHU cage for approximately five hours. *See* ¶¶ 32, 34, 36, 54, 58.

124.    Defendant Dent is liable for the challenged pattern and practice because on April 13, 2024, in response to the presence of TSSN protesters at St. Clair, Defendant Lt. Dent removed Plaintiff Ray from his cell and placed him in the RHU cage for approximately three hours. *See* ¶ 56.

125.    Defendant Speaks is liable for the challenged pattern and practice because he participated in the March 30, 2024 search of Plaintiff Ray while TSSN protesters were present at St. Clair and placed Plaintiff Ray in the RHU cage for approximately five hours.  *See* ¶¶ 34, 39, 54.

126.    Defendant Barnes is liable for the challenged pattern and practice because he participated in the March 30, 2024 search of Plaintiff Ray while TSSN protesters were present at St. Clair and placed Plaintiff Ray in the RHU cage for approximately five hours. *See* ¶¶ 34, 36-37, 54.

127.    Defendant Roderick Gadson is liable for the challenged pattern and practice because on April 1, 2024 he placed Plaintiff Ray in the RHU cage. *See* ¶¶ 44, 55.

128.    Defendant Howard is liable for the challenged pattern and practice because on April 1, 2024 he placed Plaintiff Ray in the RHU cage. *See* ¶¶ 41-44, 55.

**(B) Harassing Searches and Destruction of Property**
**Against Lt. Monika Gadson, Sgt. Speaks, Sgt. Barnes, Lt. Derrick Dent, and Lt. Burns**

129.    Before and/or after being taken to the holding cage Plaintiff Ray was searched, his possessions including religious items were destroyed, and he was subjected to invasive strip searches; which would deter a person of ordinary firmness, especially when part of a pattern and practice such as Plaintiff Ray endured. *See* ¶¶ 34, 54, 59.

130.    The challenged searches and property destruction occurred in direct response to the TSSN protests, showing retaliatory motive given that there was no legitimate security concerns nor evidence of misconduct by Plaintiff Ray that justified the searches.

131.    The following Defendants are each liable for the challenged searches and destruction of property.

132.    Defendant Gadson is liable for the challenged pattern and practice because she led the search team on March 30, 2024 that conducted a retaliatory search of Plaintiff Ray's personal property. She, and officers under her command, desecrated Plaintiff Ray's sacred religious items, broke his headphones, and otherwise threw his property all over the ground. *See* ¶ 34.

133.    Defendant Speaks is liable for the challenged pattern and practice because he participated in the March 30, 2024 retaliatory search of Plaintiff Ray's personal property. He desecrated Plaintiff Ray's sacred religious items, broke his headphones, and otherwise threw his property all over the ground. *See* ¶ 34.

134.    Defendant Barnes is liable for the challenged pattern and practice because he participated in the March 30, 2024 retaliatory search of Plaintiff Ray's personal property. He

desecrated Plaintiff Ray's sacred religious items, broke his headphones, and otherwise threw his property all over the ground. *See* ¶ 34.

135.    Defendant Dent is liable for the challenged pattern and practice because he led the April 13, 2024 retaliatory search of Plaintiff Ray's personal property. Defendant Dent searched Plaintiff Ray's person and property and desecrated his religious items. *See* ¶ 56.

136.    Defendant Burns is liable for the challenged pattern and practice because he led the May 3, 2024 retaliatory search of Plaintiff Ray's person and personal property. Defendant Burns subjected Plaintiff Ray to a strip search and destroyed or threw Plaintiff Ray's property and religious items all over the floor. Defendant Burns removed several items from Plaintiff Ray's property, including a state-issued "J Pay tablet," without returning Plaintiff Ray's property or issuing a property receipt. *See* ¶ 59.

### (C) Fabricated Disciplinary and Basis for Solitary Confinement Against LESD Agent John Doe 1, Officer Billingsley, Lt. Monika Gadson, and Officer Jackson

137.    Plaintiff Ray was placed in solitary confinement from April 1, 2024, through April 28, 2024, which is a sufficiently severe harm to deter a person of ordinary firmness.

138.    Defendants who placed Plaintiff Ray in solitary confinement on April 1, 2024 acted out of retaliatory animus. TSSN protestors did not pose a threat to the security of St. Clair. Defendant LESD Agent John Doe 1 acted with retaliatory animus when he ordered Plaintiff Ray placed in solitary confinement. Defendants Billingsley, Lt. Monika Gadson, and Jackson acted with retaliatory animus when they fabricated a disciplinary charged and denied Plaintiff Ray due process to keep him in solitary confinement. *See* ¶ 55.

139.    The week before TSSN protested at the new prison construction site, and upon information and belief attracted the attention of LESD, and on April 1, 2024, Plaintiff Ray was told that he was being placed into lock-up per order from an LESD investigation.

140.    There was no legitimate security reason to prevent Plaintiff Ray from being housed in general population, instead LESD was motivated to stop or interfere with peaceful protestors.

141.    Plaintiff Ray was denied a meaningful opportunity to contest the disciplinary charge brought against him for alleged possession of a cell phone because the officers actively prevented him from calling witnesses who were present at the area searched. *See* ¶¶ 63-66.

142.    The following Defendants are each liable for the solitary confinement of Plaintiff Ray.

143.    Defendant LESD Agent John Doe 1 is liable for ordering Plaintiff's lock up on April 1, 2024. *See* ¶¶ 55.

144.    Defendant Billingsley is liable for fabricating evidence, claiming to find a phone belonging to Plaintiff Ray, as part of an obvious scheme to manufacture a basis for a disciplinary hearing. *See* ¶¶ 35-36.

145.    Defendant Monika Gadson is liable for being the arresting officer at Plaintiff Ray's disciplinary hearing, preventing Plaintiff Ray from calling witnesses, and for lying about a cell phone being found in Plaintiff Ray's possession. *See* ¶¶ 34-36, 60-69.

146.    Defendant Jackson was the hearing officer at the disciplinary hearing and is liable for finding Plaintiff Ray guilty without providing Plaintiff a meaningful opportunity to have his witnesses testify. *See* ¶¶ 60-69.

**(D) Harsh Conditions of Confinement in Solitary**
**Against Lt. Roderick Gadson, and Sgt. Howard**

147.    On April 1, 2024, Plaintiff Ray was sent to solitary confinement cell C 35 which was flooded, covered in filth, and lacking in basic necessities such as running water, adequate lighting, and cleaning supplies, and where he was denied basic nutrition, showers, and exercise.

148.    Defendants Roderick Gadson and Howard, who informed Plaintiff Ray that he was being locked up and escorted him to cell C 35, are liable for selecting a cell with inadequate conditions of confinement to retaliate against Plaintiff Ray. *See* ¶¶ 44-45.

149.    Defendants Roderick Gadson and Howard could have selected a different cell or at least provided cleaning supplies until a better cell was available.

150.    The retaliation against Plaintiff by each Defendant in this Count reflects malice and a reckless and callous indifference to his clearly established rights under the First Amendment, rendering Defendants liable for punitive damages under 42 U.S.C. § 1983.

### VI EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT
**Placement in Holding Cage**
**Against Defendants Wardens Christopher Webster, Darrel Fox, Phillip Mitchell, Lt. Monika Gadson, Lt. Derrick Dent, Sgt. Keller Speaks, Sgt. Barnes, Lt. Roderick Gadson, and Sgt. Juan Howard**

151.    In violation of the Eighth Amendment, Defendants Wardens Christopher Webster, Darrel Fox, Phillip Mitchell, Lt. Monika Gadson, Lt. Derrick Dent, Sgt. Keller Speaks, Sgt. Barnes, Lt. Roderick Gadson, and Sgt. Juan Howard in their individual capacities are liable pursuant to 42 U.S.C. § 1983, for unnecessary use of the holding cage on Plaintiff Ray. *See* ¶¶ 39, 44, 50-52.

152.    Whether construed as a use of force or as a passive restraint, the caging and handcuffing of Plaintiff Ray, for hours on end without access to water or a bathroom, is "punishment" under the Eighth Amendment, which prohibits prison officials from using restraints maliciously or for no legitimate penological reason. *United States v. Hill*, 99 F.4th 1289, 1300 (11th Cir. 2024) ((citing *Hope v. Pelzer*, 536 U.S. 730, 742 (2002)).

153.    Plaintiff Ray engaged in no disruptive behavior and did not pose any security threats when placed in the holding cage. But ADOC was punishing Plaintiff Ray because the TSSN protestors voice support for Plaintiff Ray and FAM.

154.    The several hours that Plaintiff Ray was kept in the cage, the shackling of his arms, the denial of any drinking water or bathroom access, all contributed to his excessive pain and suffering. The public humiliation of being kept in a holding cage on a walkway also bears relevance.

155.    Defendant Webster is liable because he was present on May 2, 2024 at the breezeway when Plaintiff Ray was singled out and detained for several hours while TSSN protesters were at St. Clair, *see* ¶ 58. Defendant Webster must have known of the challenged practice because of the April cease and desist letter sent to the other Wardens, *see* ¶ 49. The notoriety of the protests, and the use of the holding cage in response on a weekly basis for two months, shows that Warden Webster must have known it was occurring. *see* ¶ 54-59. Defendant Webster failed to take any meaningful measure to prevent the continued use of the holding cage on Plaintiff Ray.

156.    Defendant Fox and Mitchell knew and must have known of the protestors at St. Clair supporting Plaintiff Ray, of the repeated use of the holding cage on Plaintiff, and of the cease-and-desist letter from Plaintiff's attorneys; but they each failed to order a halt to the mistreatment of Plaintiff Ray. *See* ¶¶ 49, 52.

157.    Defendant Monika Gadson is liable for the challenged pattern and practice because she led the search team on March 30, 2024 that began the retaliatory mistreatment of Plaintiff Ray while TSSN protestors were present at St. Clair, and placed Plaintiff Ray in the RHU cage for approximately five hours. *See* ¶¶ 32, 34, 36, 54, 58, 60, 62.

158.    Defendant Dent is liable for the challenged pattern and practice because on April 13, 2024, in response to the presence of TSSN protesters at St. Clair, Defendant Lt. Dent removed Plaintiff Ray from his cell and placed him in the RHU cage for approximately three hours. *See* ¶ 56.

159.    Defendant Speaks is liable for the challenged pattern and practice because he participated in the March 30, 2024 search of Plaintiff Ray while TSSN protesters were present at St. Clair and placed Plaintiff Ray in the RHU cage for approximately five hours. *See* ¶ 32.

160.    Defendant Barnes is liable for the challenged pattern and practice because he participated in the March 30, 2024 search of Plaintiff Ray while TSSN protesters were present at St. Clair and placed Plaintiff Ray in the RHU cage for approximately five hours. *See* ¶ 54.

161.    Defendant Roderick Gadson is liable for the challenged pattern and practice because on April 1, 2024 he placed Plaintiff Ray in the RHU cage. *See* ¶¶ 41-44, 55.

162.    Defendant Howard is liable for the challenged pattern and practice because on April 1, 2024 he placed Plaintiff Ray in the RHU cage. *See* ¶¶ 41-44, 55.

163.    The retaliation against Plaintiff Ray by each Defendant reflects malice and a reckless and callous indifference to his clearly established rights under the Eighth Amendment, rendering Defendants liable for punitive damages under 42 U.S.C. § 1983.

### VII FOURTEENTH AMENDMENT, PROCEDURAL DUE PROCESS
**Against LESD Agent John Doe 1, Officer Billingsley, Lt. Monika Gadson, and Officer Jackson**

164.    In violation of the Fourteenth Amendment's Due Process Clause, Defendants are each liable pursuant to 42 U.S.C. § 1983 for the solitary confinement of Plaintiff Ray in April 2024 without due process.

165.    The conditions of Plaintiff Ray's solitary confinement were atypical and severe, given the unsanitary cell he was placed in and the denial of adequate cleaning supplies, showers, exercise, and basic nutrition. *See* ¶¶ 44-47.

166.    Plaintiff Ray was denied a meaningful opportunity to contest the disciplinary charge brought against him for alleged possession of a cell phone, because the officers actively prevented him from calling witnesses who were present at the area searched. *See* ¶ 60-69.

167.    The following Defendants are each liable for the solitary confinement of Plaintiff Ray.

168.    Defendant LESD Agent John Doe 1 is liable for ordering Plaintiff's lock up on April 1, 2024. *See* ¶¶ 55.

169.    Defendant Billingsley is liable for fabricating evidence, claiming to find a phone belonging to Plaintiff Ray, as part of an obvious scheme to manufacture a basis to mistreat Plaintiff Ray. *See* ¶¶ 35-36.

170.    Defendant Monika Gadson is liable for being the arresting officer at Plaintiff Ray's disciplinary hearing, and for lying about a cell phone being found in Plaintiff Ray's possession. *See* ¶¶ 34, 60-69.

171.    Defendant Jackson was the hearing officer at the disciplinary hearing and is liable for finding Plaintiff Ray guilty without providing Plaintiff a meaningful opportunity to have his witnesses testify. *See* ¶¶ 60-69.

172.    The retaliation against Plaintiff by each Defendant reflects malice and a reckless and callous indifference to his clearly established rights under the First Amendment, rendering Defendants liable for punitive damages under 42 U.S.C. § 1983.

**VIII INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Against Defendants Christopher Webster, Darrel Fox, Phillip Mitchell, Lt. Monika Gadson, Lt. Derrick Dent, Sgt. Keller Speaks, Sgt. Barnes, Lt. Roderick Gadson, and Sgt. Juan Howard**

173.     In violation of Alabama law Defendants Webster, Fox, Mitchell, Lt. Monika Gadson, Lt. Dent, Sgt. Speaks, Sgt. Barnes, Lt. Roderick Gadson, and Sgt. Howard intentionally inflicted emotional distress on Plaintiff Ray when they placed him in a holding cage on the RHU walk yard while handcuffed for several hours each time, without drinking water or bathroom access. *See* ¶¶ 39, 60-69. The repeated use of the holding cage on Plaintiff Ray in combination also establishes the requisite severity. This is extreme and outrageous conduct that Defendants intentionally inflicted to cause Plaintiff Ray severe emotional distress.

174.     Defendants' actions were taken with malice and a reckless and callous indifference to Plaintiff Ray's rights, rendering the Defendants liable for punitive damages.

175.     Given the timing of when Plaintiff Ray is placed in the holding cage, he is placed in the holding cage when the TSSN protesters arrive and released when they leave, the only reason for this mistreatment of Plaintiff Ray is the TSSN protest and Plaintiff Ray's protected First Amendment activity in being associated with the protest and its pro-FAM message.

176.     ADOC employees have not asserted any legitimate reason for placing Plaintiff Ray in the holding cage, when he had engaged in no misconduct and posed no threat of harm, and instead he was told to stop filing grievances. *See* ¶ 40, 42.

177.     The following Defendants are each liable for the retaliatory use of the holding cage on Plaintiff Ray as follows.

178.     Defendant Webster is liable because he was present on May 2, 2024 at the breezeway when Plaintiff Ray was singled out and detained for several hours while TSSN protesters were at St. Clair. *See* ¶ 58. Defendant Webster must have known of the challenged practice because of the April cease and desist letter sent to the other Wardens. *See* ¶ 49. The

notoriety of the protests, and the use of the holding cage in response on a weekly basis for two months, shows that Warden Webster must have known it was occurring. *See* ¶ 51, 54-59. Defendant Webster failed to take any meaningful measure to prevent the continued use of the holding cage on Plaintiff Ray.

179.    Defendants Fox and Mitchell knew and must have known of the protestors at St. Clair supporting Plaintiff Ray, of the repeated use of the holding cage on Plaintiff, and of the cease-and-desist letter from Plaintiff's attorneys; but they each failed to order a halt to the mistreatment of Plaintiff Ray. *See* ¶¶ 49, 51, 54-49.

180.    Defendant Monika Gadson is liable for the challenged pattern and practice because she led the search team on March 30, 2024 that began the retaliatory mistreatment of Plaintiff Ray while TSSN protestors were present at St. Clair, and placed Plaintiff Ray in the RHU cage for approximately five hours. *See* ¶¶ 32, 34, 36, 54, 58.

181.    Defendant Dent is liable for the challenged pattern and practice because on April 13, 2024, in response to the presence of TSSN protesters at St. Clair, Defendant Dent removed Plaintiff Ray from his cell and placed him in the RHU cage for approximately three hours. *See* ¶ 56.

182.    Defendant Speaks is liable for the challenged pattern and practice because he participated in the March 30, 2024 search of Plaintiff Ray while TSSN protesters were present at St. Clair and placed Plaintiff Ray in the RHU cage for approximately five hours.  *See* ¶¶ 39, 54.

183.    Defendant Barnes is liable for the challenged pattern and practice because he participated in the March 30, 2024 search of Plaintiff Ray while TSSN protesters were present at St. Clair and placed Plaintiff Ray in the RHU cage for approximately five hours. *See* ¶ 54.

184.    Defendant Roderick Gadson is liable for the challenged pattern and practice because on April 1, 2024 he placed Plaintiff Ray in the RHU cage. *See* ¶¶ 44, 55.

185.    Defendant Howard is liable for the challenged pattern and practice because on April 1, 2024 he placed Plaintiff Ray in the RHU cage. *See* ¶¶ 44, 55.

186.    Immunity is unavailable for Defendants because they each acted willfully, maliciously, fraudulently, or in bad faith. Ala. Code § 36-1-12(d)(2).

187.    Immunity is also unavailable for Defendants because their conduct violated the United States Constitution, the Alabama Constitution, and applicable laws and regulations. Ala. Code § 36-1-12(d)(1).

### IX. CONVERSION
**Against Lt. Monika Gadson, Sgt. Speak, Sgt. Barnes, Lt. Derrick Dent, and Lt. Burns**

188.    In violation of Alabama Code § 6-5-260 Defendants are liable for conversion of Plaintiff Ray's property by destroying it without any lawful authority

189.    Before and/or after being taken to the holding cage Plaintiff Ray was searched, and his possessions including religious items were destroyed. *See* ¶¶ 34, 54, 59.

190.    The challenged property destruction occurred in direct response to the TSSN protests, showing illegitimate motive given that there was no legitimate security concerns nor evidence of misconduct by Plaintiff Ray that justified the property destruction.

191.    The following Defendants are each liable for the challenged pattern of destruction of property.

192.    Defendant Monika Gadson is liable for the challenged pattern and practice because she led the search team on March 30, 2024 that conducted a search of Plaintiff Ray's personal property. She, and officers under her command, desecrated Plaintiff Ray's sacred religious items, broke his headphones, and otherwise threw his property all over the ground. *See* ¶ 34.

193.    Defendant Speaks is liable for the challenged pattern and practice because he participated in the March 30, 2024 retaliatory search of Plaintiff Ray's personal property. He desecrated Plaintiff Ray's sacred religious items, broke his headphones, and otherwise threw his property all over the ground. *See* ¶ 34.

194.    Defendant Barnes is liable for the challenged pattern and practice because he participated in the March 30, 2024 retaliatory search of Plaintiff Ray's personal property. He desecrated Plaintiff Ray's sacred religious items, broke his headphones, and otherwise threw his property all over the ground. *See* ¶ 34.

195.    Defendant Dent is liable for the challenged pattern and practice because he led the April 13, 2024 retaliatory search of Plaintiff Ray's personal property. Defendant Lt. Dent searched Plaintiff Ray's person and property and desecrated his religious items. *See* ¶ 56.

196.    Defendant Burns is liable for the challenged pattern and practice because he led the May 3, 2024 retaliatory search of Plaintiff Ray's person and personal property. Defendant Lt. Burns destroyed or threw Plaintiff Ray's property and religious items all over the floor. Lt. Burns removed several items from Plaintiff Ray's property, including a state-issued "J Pay tablet," without returning Plaintiff Ray's property or issuing a property receipt. *See* ¶ 59.

197.    Immunity is unavailable for Defendants because they each acted willfully, maliciously, fraudulently, or in bad faith. Ala. Code § 36-1-12(d)(2).

198.    Immunity is also unavailable for Defendants because their conduct violated the United States Constitution, the Alabama Constitution, and applicable laws and regulations. Ala. Code § 36-1-12(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ray prays that after due proceedings in this Court, judgment be entered in favor of Plaintiff Ray and against all Defendants jointly, severally, and *in solido* as a result of their participation in the conduct giving rise to these allegations and respectfully request that the Court award relief as follows:

1. Issue a declaratory relief that the practices complained of herein are unlawful under the First Amendment of the U.S. Constitution.

2. Issue a permanent injunction requiring Defendants, their agents, employees, and all persons under their control or acting in active concert or participation with them to:

    a. Enjoin Defendants from retaliating against Plaintiff Ray by placing Plaintiff Ray in solitary confinement;

    b. Enjoin Defendants from retaliating against Plaintiff Ray by subjecting Plaintiff Ray to harassing shakedowns, sexually harassing body searches or property searches or desecration of religious material;

    c. Enjoin Defendants from retaliating against Plaintiff Ray by subjecting Plaintiff Ray to disciplinary charges without due process

3. Award compensatory and/or consequential damages in an amount to be determined at trial pursuant to 42 U.S.C. §§ 1983.

4. Award damages resulting from all harm Plaintiff suffered, including but not limited to:

    i. conscious physical pain and suffering;

    ii. physical injury and impairment;

    iii. mental anguish and anxiety;

    iv. loss of liberty;

    v. destruction of property and desecration of religious items

      vi.  denial of basic due process

      vii.  intentional placement into inhumane living quarters

  b.  punitive damages;

  c.  nominal damages;

  d.  any and all other damages, which will be more fully proven at trial, including for the intangible but concrete harms proximately caused by the violations of Plaintiff Ray's First Amendment rights; and

  e.  all other forms of relief provided by law together with interest from the date of injury until paid, plus costs of these proceedings.

5. Award Plaintiff Ray all attorneys' fees that are entitled to under 42 U.S.C. § 1988, prejudgment interest, and costs.

6. Award Plaintiff Ray all such damages as are reasonable under the premises set forth herein, together with legal interest thereon from the date of judicial demand until paid; for all costs of this proceeding, as well as penalties and attorneys' fees to the extent applicable; and for all other relief to which Plaintiff Ray may be entitled.

7. A jury trial is demanded.

        Respectfully submitted this 19th day of July, 2024.

                            /s/ *Andrew Menefee*
                            Andrew Menefee
                            **MENEFEE LAW**
                            Alabama Bar No. 1529W23S
                            1250 Connecticut Ave NW
                            Ste. 700
                            Washington D.C., 20036
                            202-381-0143
                            amenefee@menefee-law.com
                            *Attorney for Plaintiff*